## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MICHAEL KENT, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. _____ |
| v. | ) ) | JURY TRIAL DEMANDED |
| BABCOCK & WILCOX ENTERPRISES, INC., MATTHEW E. AVRIL, HENRY E. BARTOLI, KENNETH SIEGEL, CYNTHIA S. DUBIN, BRIAN R. KAHN, ALAN HOWE, BRYANT RILEY, and KENNETH YOUNG, | ) ) ) ) ) ) ) ) | CLASS ACTION |
| Defendants. | ) | |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This action stems from a proposed transaction announced on April 5, 2019, pursuant to which the Board of Directors (the "Board" or "Individual Defendants") of Babcock & Wilcox Enterprises, Inc. ("Babcock" or the "Company") caused the Company to amend its credit agreement with its current lenders, whereby B. Riley FBR, Inc. ("B. Riley"), which owns 6.5% of the Company's outstanding shares, has joined the facility and has arranged an additional $150 million in secured financing through a last out term loan, and has agreed to provide an uncommitted incremental credit facility of up to another $15 million.  In connection with the amendment, the Company agreed to seek shareholder approval to increase the number of its authorized shares, execute within six months a $50 million rights offering at $0.30 per share (the

proceeds of which will be used for repayment of a portion of the new debt) and, immediately thereafter, exchange $35.1 million of the last out term loan held by Vintage Capital Management LLC ("Vintage"), which owns 17.8% of the Company's outstanding shares, for common stock at $0.30 per share, issue approximately 16.7 million warrants, each to purchase one share of common stock for $0.01 per share, and execute a 1:10 reverse stock split (as described in greater detail below, the "Proposed Transaction").

2.      On May 13, 2019, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission ("SEC"), which seeks stockholder approval of the Proposed Transaction and scheduled a stockholder vote for June 14, 2019.

3.      As set forth below, the Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.  Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

5.      This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

6.      Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

7.      Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Babcock common stock.

8.      Defendant Babcock is a Delaware corporation and maintains its principal executive offices at 20 South Van Buren Avenue, Barberton, Ohio 44203.  Babcock's common stock is traded on the NYSE under the ticker symbol "BW."

9.      Defendant Matthew E. Avril ("Avril") is Chairman of the Board of the Company. Avril is a member of the strategic advisory board of Vintage and was appointed to the Board by Vintage.

10.      Defendant Henry E. Bartoli ("Bartoli") is Chief Strategy Officer and a director of the Company.  Bartoli was appointed to the Board by Vintage.

11.      Defendant Kenneth Siegel ("Siegel") is a director of the Company.   Siegel was designated as a director by Vintage.

12.      Defendant Cynthia S. Dubin ("Dubin") is a director of the Company.

13.      Defendant Brian R. Kahn ("Kahn") is a director of the Company.  Kahn is the founder and managing partner of Vintage and was appointed to the Board by Vintage.

14.      Defendant Alan Howe ("Howe") is a director of the Company. Howe was designated as a director by B. Riley.

15.      Defendant Bryant Riley ("Riley") is a director of the Company.  Riley is Chairman and Co-Chief Executive Officer of B. Riley and Chief Executive Officer ("CEO") of B. Riley Capital Management, LLC, a wholly-owned subsidiary of B. Riley.  Riley was designated as a director by B. Riley.

16.     Defendant Kenneth Young ("Young") is CEO of the Company.  Young is President of B. Riley and CEO of B. Riley Principal Investments, a wholly-owned subsidiary of B. Riley.

17.     The defendants identified in paragraphs 9 through 16 are collectively referred to herein as the "Individual Defendants."

## CLASS ACTION ALLEGATIONS

18.     Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Babcock (the "Class").  Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

19.     This action is properly maintainable as a class action.

20.     The Class is so numerous that joinder of all members is impracticable.  As of April 25, 2019, there were approximately 168,867,532 shares of Babcock common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

21.     Questions of law and fact are common to the Class, including, among others, whether defendants violated the Exchange Act and whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

22.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

23.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the

interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

24.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company and the Proposed Transaction

25.     Babcock is a global leader in energy and environmental technologies and services for the power and industrial markets.

26.     On April 5, 2019, Babcock announced that the Board caused the Company to amend its credit agreement with its current lenders, whereby B. Riley has joined the facility and has arranged an additional $150 million in secured financing through a last out term loan and has agreed to provide an uncommitted incremental credit facility of up to another $15 million.

27.     In connection with the amendment, the Company agreed to seek shareholder approval to increase the number of its authorized shares, execute within six months a $50 million rights offering at $0.30 per share (the proceeds of which will be used for repayment of a portion of the new debt) and, immediately thereafter, exchange $35.1 million of the last out term loan held by Vintage for common stock at $0.30 per share, issue approximately 16.7 million warrants, each to purchase one share of common stock for $0.01 per share, and execute a 1:10 reverse stock split.

28.     According to the press release announcing the Proposed Transaction:

Babcock & Wilcox Enterprises, Inc. ("B&W") (NYSE: BW) announced today it has taken strategic action to significantly strengthen its financial position and chart a path to profitability in 2019. The Company has amended its credit agreement with its current lenders, whereby B. Riley FBR, Inc. has joined the facility and has arranged an additional $150 million in secured financing via a last out term loan and has agreed to provide an uncommitted incremental credit facility of up to

another $15 million. This follows an additional $10.0 million in commitments from affiliates of B. Riley FBR under a last out term loan announced on March 19, 2019. . . .

In connection with the amendment, the Company has agreed to seek shareholder approval to increase the number of its authorized shares, execute within six months a $50 million rights offering at $0.30 per share (the proceeds of which will be used for repayment of a portion of the new debt) and, immediately thereafter, exchange $35.1 million of the last out term loan held by Vintage Capital Management LLC for common stock at $0.30 per share, issue approximately 16.7 million warrants, each to purchase one share of common stock for $0.01 per share, and execute a 1:10 reverse stock split. . . .

Advisors

Ducera Partners LLC and its affiliates are serving as financial advisor to B&W, and King & Spalding LLP is serving as B&W's principal legal counsel with Wachtell, Lipton, Rosen & Katz serving as special counsel to B&W's board of directors. CMS Cameron McKenna Nabarro Olswang LLP is serving as legal counsel with respect to B&W's European renewable energy projects, and Alvarez & Marsal North America LLC's Robert M. Caruso is serving as B&W's chief implementation officer with respect to various corporate initiatives. Kirkland & Ellis LLP is serving as legal counsel to Vintage Capital Management LLC, and Brown Rudnick LLP is serving as legal counsel to B. Riley.

29.     As further described in the Proxy Statement:

After evaluating a range of strategic alternatives, in April 2019, we executed an amendment to our U.S. credit agreement and a Letter Agreement with B. Riley and Vintage pursuant to which we committed to use our reasonable best efforts to effect the following transactions (the "Equitization Transactions"):

1. a $50 million rights offering allowing our stockholders to subscribe for shares of our common stock at a price of $0.30 per share, the proceeds of which will be used to prepay a portion of the Tranche A-3 last-out term loans under our U.S. credit agreement (the "2019 rights offering");

2. the exchange of Tranche A-1 last-out term loans under our U.S. credit agreement for shares of our common stock at a price of $0.30 per share (the "Tranche A-1 debt exchange"); and

3. the issuance to B. Riley or such other persons as B. Riley may designate of an aggregate 16,666,667 warrants, each to purchase one share of our common stock at an exercise price of $0.01 per share.

If the Equitization Transactions are consummated, we will issue approximately 290.4 million shares of common stock. Based on the number of shares of common stock outstanding as of April 25, 2019, the shares issued in the Equitization Transactions will represent approximately 63% of the total shares of common stock outstanding following the Equitization Transactions. This excludes the 16,666,667 shares of common stock subject to issuance pursuant to the exercise of warrants issued in the Equitization Transactions as well shares of common stock reserved for issuance under the 2015 LTIP. The actual number of shares of common stock issued in the Equitization Transactions may be higher than the amount indicated, however, due to, among other things, the accumulation of paid-in-kind interest on the outstanding Tranche A-1 last-out term loans under our U.S. credit agreement through the completion of the Tranche A-1 debt exchange.

Through this proposal, we are seeking stockholder approval of the Equitization Transactions, including the issuance of shares of our common stock to B. Riley and Vintage as part of the Equitization Transactions. Rule 312.03 of the NYSE Listed Company Manual, requires stockholder approval before we may permissibly issue common stock to a related party such as B. Riley or Vintage, subject to certain exceptions, or engage in a transaction that could result in a change of control of the Company. As a result, our commencement and consummation of the Equitization Transactions are conditioned on, among other things, the receipt of stockholder approval of this proposal to approve the Equitization Transactions, as well as the approval of the authorized share increase proposal (Proposal 5) and the proposal to renounce certain corporate opportunities (Proposal 7) (together with this proposal to approve the Equitization Transactions, the "Equitization Proposals"). If we receive the requisite stockholder vote to approve each of the Equitization Proposals, and all other conditions to the Equitization Transactions described in this proxy statement are satisfied, we intend to commence and complete the Equitization Transactions as promptly as practicable. Approval of this proposal requires the affirmative vote of a majority of the shares cast on the matter. See "—Recommendation and Vote Required."

In connection with the Equitization Transactions, we entered into a backstop exchange agreement with B. Riley on April 30, 2019 (the "Backstop Exchange Agreement"), pursuant to which B. Riley has agreed to purchase from us all unsubscribed shares of common stock in the 2019 rights offering for cash or by exchanging an equal principal amount of outstanding Tranche A-2 or Tranche A-3 last-out term loans (the "backstop exchange commitment"). The backstop commitment is subject to various terms and conditions that we negotiated with B. Riley, which are described below.

B. Riley and Vintage are significant stockholders of the Company and have various interests in the Equitization Transactions that may differ from those of our other stockholders. See "—Interests of Our Officers, Directors, and Principal Stockholders in the Equitization Transactions" below for more information.

30.     Vintage beneficially owns 25,080,000 shares of Babcock common stock,

representing 17.8% of the Company's outstanding shares.  B. Riley beneficially owns 10,908,713

shares of Babcock common stock, representing 6.5% of the Company's outstanding shares.

31.     According to the Proxy Statement:

[I]f no stockholder elects to participate in the 2019 rights offering and if all warrants issued in the Equitization Transactions are issued to B. Riley, assuming we receive the requisite stockholder vote to approve the Equitization Proposals and B. Riley fully backstops the 2019 rights offering on the terms described below, we will issue an aggregate of approximately 183.3 million shares of common stock to B. Riley and approximately 123.7 million shares of common stock to Vintage, which would increase B. Riley's ownership percentage of our common stock to approximately 40.8% (assuming B. Riley's beneficial ownership and total shares outstanding as of April 4, 2019) and would increase Vintage's ownership percentage of our common stock to approximately 31.3% (assuming B. Riley's beneficial ownership and total shares outstanding as of April 4, 2019) after giving effect to the Equitization Transactions. . . .

[I]f B. Riley and Vintage, together, own more than 50% of our common stock following consummation of the Equitization Transactions, we will be a "controlled company" within the meaning of the NYSE listing standards, which could lessen the governance protections afforded to our stockholders and could make our common stock less attractive to some investors or otherwise harm our stock price.

32.     The Proxy Statement further states that "existing stockholders (other than B. Riley and Vintage) will see their proportionate ownership interest in the Company reduced as a result of the Equitization Transactions, even if they elect to participate in full in the 2019 rights offering," and, "to the extent that a stockholder does not elect to participate in the 2019 rights offering and the 2019 rights offering is consummated, such stockholder's proportionate ownership interest in the Company will be substantially reduced."

***The Proxy Statement Omits Material Information***

33.     Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction, which seeks stockholder approval of the Proposed Transaction at a meeting of stockholders scheduled for June 14, 2019.[1]

---

[1] As set forth in the Proxy Statement, "[t]he Board recommends that stockholders vote 'FOR' the approval of [the] proposal to approve the" Proposed Transaction.

34.     As set forth below, the Proxy Statement omits material information with respect to the Proposed Transaction.

35.     First, the Proxy Statement fails to disclose Babcock's financial projections and a fair summary of the analyses performed by the Company's financial advisor in connection with the Proposed Transaction, Ducera Partners LLC ("Ducera").

36.     The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company.  Additionally, the key inputs and range of ultimate values generated by a banker's analyses must be fairly disclosed.

37.     Second, the Proxy Statement fails to disclose the terms of Ducera's engagement.

38.     Among other things, the Proxy Statement fails to disclose the amount of compensation Ducera has received or will receive in connection with its engagement, as well as the amount of Ducera's compensation that is contingent upon consummation of the Proposed Transaction.

39.     Further, the Proxy Statement fails to disclose whether Ducera has performed past services for Babcock, B. Riley, Vintage, or their affiliates, as well as the timing and nature of such services and the amount of compensation received by Ducera for such services.

40.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

41.     Third, the Proxy Statement fails to disclose a fair summary of the process and negotiations leading up to the Proposed Transaction.

42.     Among other things, the Proxy Statement fails to disclose the "range of strategic alternatives" evaluated by the Individual Defendants prior to determining to pursue the Proposed Transaction.

43.     The Proxy Statement fails to disclose the timing and nature of the negotiations and valuation of the Proposed Transaction.

44.     The Proxy Statement also fails to disclose the nature of the involvement of Individual Defendants Avril, Bartoli, Siegel, Kahn, Howe, Riley, and Young in the process leading up to the Proposed Transaction.  As set forth above, B. Riley and Vintage appointed Avril, Bartoli, Siegel, Kahn, Howe, and Riley to the Board, and Young currently serves as both CEO of Babcock and President of B. Riley and CEO of B. Riley Principal Investments, a wholly-owned subsidiary of B. Riley.

45.     Further, the Proxy Statement fails to disclose whether the Individual Defendants formed a special committee of the Board in connection with the Proposed Transaction.

46.     Stockholders are entitled to an accurate description of the process leading up to the Proposed Transaction.

47.     The omission of the above-referenced material information renders the Proxy Statement false and misleading.

48.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## <u>COUNT I</u>

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Babcock**

49.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

50.     The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.  Babcock is liable as the issuer of these statements.

51.     The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

52.     The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

53.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.   In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

54.     The Proxy Statement is an essential link in causing plaintiff to approve the Proposed Transaction.

55.     By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

56.     Because of the false and misleading statements in the Proxy Statement, plaintiff is threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants

57.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

58.     The Individual Defendants acted as controlling persons of Babcock within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of Babcock and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

59.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

60.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of the Proxy Statement.

61.     By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

62.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.  As a direct and proximate result of defendants' conduct, plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.      Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.      Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.      Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: June 3, 2019

**RIGRODSKY & LONG, P.A.**

By:  */s/ Gina M. Serra*
Brian D. Long (#4347)

**OF COUNSEL:**
Gina M. Serra (#5387)
300 Delaware Avenue, Suite 1220

**RM LAW, P.C.**
Wilmington, DE 19801
Richard A. Maniskas
Telephone: (302) 295-5310
1055 Westlakes Drive, Suite 300
Facsimile: (302) 654-7530
Berwyn, PA 19312
Email: bdl@rl-legal.com
Telephone: (484) 324-6800
Email: gms@rl-legal.com
Facsimile: (484) 631-1305
Email: rm@maniskas.com

*Attorneys for Plaintiff*